COMMONWEALTH vs. FRANCIS X. DONOVAN.

Norfolk.    April 23, 1979. — August 31, 1979.

Present: KEVILLE, GOODMAN, & GREANEY, JJ.

Constitutional Law, Double jeopardy. Practice, Criminal, Double jeopardy, Mistrial, Dismissal.

Where a trial judge declared a mistrial of a criminal case because the trial could not be completed prior to the start of his vacation and where the Commonwealth failed to show that the defendant had consented to the mistrial, the defendant was entitled to dismissal of the indictment on double jeopardy grounds. [314-318]

INDICTMENT found and returned in the Superior Court on February 15, 1978.

A motion to dismiss was heard by Tracy, J., a District Court judge sitting under statutory authority.

Calvin C. Carr, Assistant District Attorney (Charles J. Hely, Assistant District Attorney, with him) for the Commonwealth.

George G. Burke (George F. Murphy with him) for the defendant.

GOODMAN, J. This is an appeal by the Commonwealth under G. L. c. 278, § 28E, from the dismissal of an indictment charging the defendant with breaking and entering into a building in the nighttime with intent to commit larceny, and larceny.[1] The defendant's motion to dismiss was allowed (by the motion judge) on double jeopardy grounds on June 22, 1978, when the case was called for trial in the Superior Court for the second time. Trial of the case had originally begun on April 6, 1978, before a

---

[1] The Commonwealth waived its appeal from the dismissal of an indictment for a related misdemeanor.

different judge (the trial judge). During that day the jury were empanelled, both parties made openings, and the jury heard testimony from two of the Commonwealth's witnesses. On the following day, a Friday, after a lobby conference the judge declared a mistrial and discharged the jury.

It is undisputed that, when the mistrial was declared, jeopardy had attached within the meaning of the double jeopardy clause of the Fifth Amendment to the Constitution of the United States applicable to the States through the Fourteenth Amendment. *Benton* v. *Maryland,* 395 U.S. 784, 794 (1969). The defendant had obviously been "put to trial before the trier of the facts." *United States* v. *Jorn,* 400 U.S. 470, 479 (1971). See *Commonwealth* v. *Clemmons,* 370 Mass. 288, 291-292 (1976). As stated in *Arizona* v. *Washington,* 434 U.S. 497, 503-505 (1978), "Because jeopardy attaches before the judgment becomes final, the constitutional protection also embraces the defendant's 'valued right to have his trial completed by a particular tribunal.' [Citing *United States* v. *Jorn,* 400 U.S. at 484, *Illinois* v. *Somerville,* 410 U.S. 458, 466 (1978), and *Wade* v. *Hunter,* 336 U.S. 684, 689 (1949).] . . . Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial. . . . [However] retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused. [This is] [b]ecause of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused . . ." (footnotes omitted).

The Court went on to say, "Yet in view of the importance of the right, and the fact that it is frustrated by any mistrial, the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one. The prosecutor must demonstrate 'manifest necessity' for any mistrial declared over the objection of the defendant." *Id.* at 505.

From our examination of the transcript of the hearing of June 22, 1978, on which the dismissal was based, supplemented by the transcript of the hearing on June 29, 1978, on the Commonwealth's motion to vacate the order of dismissal,[2] we are convinced that the motion judge was warranted in rejecting the justification for aborting the trial offered by the Commonwealth — simply that "when the judge stated he would not be there the Commonwealth and defense counsel had no other choice." But it is undisputed that the trial judge was leaving for a week's vacation beginning the following Tuesday and declared a mistrial because he could not finish the trial on the preceding Friday and Monday. We do not conceive of circumstances in which a judge's vacation plans would constitute "manifest necessity" and justify subjecting a defendant to the expense and strain of another trial. *People* v. *Michael*, 48 N.Y.2d 1, 10 (1979) ("Weighed in the balance of judicial obligations, a necessary change in travel plans is of little significance"). If there could be such extraordinary circumstances, the burden was on the Commonwealth to adduce them. *Arizona* v. *Washington*,

_____

[2] We treat the Commonwealth's motion to vacate (heard one week after the motion to dismiss) as within the ambit of our review of the defendant's motion to dismiss under G. L. c. 278, § 28E.

We have also before us the transcript of the aborted trial in April, 1978 (G. L. c. 278, § 28E, last par.). However, the transcript was apparently not before the motion judge since it was not available until the following December. We therefore do not consider it in reviewing the action of the motion judge. *Thames* v. *Commonwealth*, 365 Mass. 477, 478 n.2 (1974). In any event, the circumstances of the aborted trial were related in substance to the motion judge and are not in dispute. (The motions were heard on representations of counsel.)

434 U.S. at 505; *Dunkerley* v. *Hogan*, 579 F.2d 141, 146 (2d Cir. 1978), cert. denied, 439 U.S. 1090 (1979). The Commonwealth made no attempt to meet this burden.

The Commonwealth argues in the alternative that the defendant (as put in the Commonwealth's brief) "should not be permitted to successfully oppose a retrial two months later when he did not voice any objection to the mistrial at the time of the trial judge's ruling." That may have some relevance to the question whether the trial was terminated "without the defendant's consent," *United States* v. *Jorn*, 400 U.S. at 480, *United States* v. *Perez*, 22 U.S. (9 Wheat.) 579, 579 (1824),[3] and therefore, absent "manifest necessity," gave rise to a double jeopardy claim — or putting it otherwise whether, the defendant consenting, his claim to rights under the double jeopardy clause was waived. See *United States* v. *Gori*, 282 F.2d 43, 47 (2d Cir. 1960), aff'd, 367 U.S. 364 (1961), referring to "the now well settled view that waiver or consent by the defendant barred his later resort to the plea."

In our case the motion judge was well justified in failing to find consent, which — since a waiver of constitutional rights is involved — it was the Commonwealth's burden to establish. The motion judge could accept, as he apparently did, the representations by defense counsel at the June 22 hearing and reiterated at the June 29 hearing that defense counsel had requested that the trial go forward and indeed that he had offered to "shorten up" the trial by eliminating some of the corroborating witnesses. This is undisputed, and indeed the prosecuting attorney stated that "[t]he Commonwealth was as much dismayed as defense counsel when this case was mistried." In the circumstances it is of little significance that

---

[3] This classic phraseology is also found in Massachusetts cases treating our common law and statutory double jeopardy rules. *Commonwealth* v. *Sholes*, 13 Allen 554, 556 (1866). *Commonwealth* v. *Micheli*, 258 Mass. 89, 91 (1927). *Commonwealth* v. *Clemmons*, 370 Mass. 288, 292 (1976). See *Commonwealth* v. *Campopiano*, 254 Mass. 560, 562 (1926); *Jones* v. *Commonwealth*, 7 Mass. App. Ct. 383, 390 (1979).

upon emerging from the lobby conference the defense counsel did not record an objection or exception to the announcement to the jury of the mistrial — save as an exception might have become the vehicle for appeal, had the defendant been convicted a second time. But the defendant chose the route of a motion to dismiss (see *Commonwealth* v. *Cronin*, 257 Mass. 535, 537 [1926]; *Thames* v. *Commonwealth*, 365 Mass. 477, 478 [1974]; *Commonwealth* v. *Clemmons*, 370 Mass. 288, 290 [1976]; *Jones* v. *Commonwealth*, 7 Mass. App. Ct. 383, 384 [1979]); and the motion judge was free to entertain it. See *Commonwealth* v. *Hardy*, 6 Mass. App. Ct. 892 (1978).

This is not a situation in which defense counsel stood silent without making his position known and the totality of the circumstances was such that the Commonwealth could be said to have carried its burden of showing waiver of the double jeopardy claim. See generally *Mistrial and Double Jeopardy*, 49 N.Y.U.L Rev. 937, § 3, at 948-951 ("Consent to Mistrial") (1974); 63 A.L.R.2d 782, § 3, at 788-790 ("Particular conduct generally; express and implied consent") (1959). The position of defense counsel was as clear as in *United States* v. *Pierce*, 593 F.2d 415, 417 (1st Cir. 1979), in which counsel, as in this case, had indicated that they wished to proceed with the trial and the court held on appeal — as we do in this case — that there was no "manifest necessity" for a mistrial. The Commonwealth did not seriously argue before the motion judge that defense counsel's failure to record an objection created any ambiguity in his position which misled the trial judge.[4]

---

[4] We therefore need not concern ourselves with the further question whether consent to a mistrial must be given by the defendant personally. *Himmelfarb* v. *United States*, 175 F.2d 924, 931 (9th Cir.), cert. denied, 338 U.S. 860 (1949). *United States* v. *Rich*, 589 F.2d 1025, 1032 (10th Cir. 1978). Compare *Commonwealth* v. *Sholes*, 13 Allen at 556-557, decided under the Massachusetts law in which consent of a defendant was implied.

The Commonwealth's brief suggests that the trial judge may have relied on the lack of an objection and quotes the following from the explanation which the trial judge gave to the jury on declaring a mistrial. "I've explained to counsel and they have been very understanding about this." The transcript of the aborted trial (see note 2, *supra*) was not before the motion judge; and the prosecuting attorney, neither at the hearing on the motion to dismiss nor at the hearing on the motions to vacate, found this remark significant enough to call to the motion judge's attention. We cannot see how speculation as to the purport of this ambiguous sentence could have changed the motion judge's conclusion.

*Order dismissing indictment affirmed.*