## COMMONWEALTH *vs.* JAMES M. HORRIGAN.

No. 95-P-1309.

Middlesex. May 13, 1996. - September 19, 1996.

Present: PERRETTA, KAPLAN, & KASS, JJ.

*Constitutional Law,* Double jeopardy. *Practice, Criminal,* Double jeopardy, Mistrial. *Judge. Words,* "Manifest necessity."

In a criminal case, the Commonwealth did not demonstrate the existence of manifest necessity to justify a judge's declaration of a mistrial on the second day of a jury trial when the presiding judge became unavailable, where counsel had not been given an opportunity to be heard nor had consideration been given to alternatives to a mistrial [339-341]; nor did the defendant's silence amount to consent to the mistrial, where it was reasonable to believe that an objection would have been futile [341-343]: retrial of the case was barred by principles of double jeopardy.

COMPLAINT received and sworn to in the Woburn Division of the District Court Department on November 21, 1994.

On transfer to the jury session of the Cambridge Division, a motion to dismiss the complaint, after declaration of a mistrial, was considered by *Roanne Sragow,* J., and the case was tried before *Jonathan Brant,* J.

*Terry Scott Nagel* for the defendant.

*David W. Cunis,* Assistant District Attorney, for the Commonwealth.

KAPLAN, J. This appeal poses a claim of double jeopardy. We reach it after a sequential statement of the case.

On November 19, 1994, about 11:45 P.M., James Horrigan was arrested on route 62 by North Reading Officer Robert Marchionda, and later was charged by complaint with operating under the influence of liquor and with civil violations of speeding and crossing a marked lane.

The matter came to trial in Cambridge District Court, jury-of-six session, on the afternoon of March 23, 1995.

Called by the Commonwealth, Marchionda testified that while on uniform patrol in a cruiser that night, headed east on route 62, he observed a car traveling west in the next lane at forty-five miles per hour in a thirty mile per hour zone and swerving or weaving. Marchionda said he made a three-point turn, gave chase, and, activating his lights, caused the car to pull to the side of the road and stop. As he asked the driver, James Horrigan (defendant), routine questions, he smelled the odor of alcohol and saw the glassy-eyed sign of inebriation. Marchionda said he put Horrigan through a series of field sobriety tests which he believed demonstrated impairment of Horrigan's capacity to drive. Thereupon Marchionda wrote a citation and placed the defendant under arrest. On cross-examination the officer conceded that the defendant, although swerving, had not crossed the center line, and that the defendant had understood and responded to instructions during the tests.

Officer Kevin Brennan, who had arrived as backup, in his testimony confirmed that the defendant had difficulty with the tests and smelled of alcohol; he reported also that the defendant had been belligerent, agitated, swearing repeatedly while being conducted to the police station.

The Commonwealth rested, defendant's motion for a required finding was denied, and the defense called Horrigan's mother to the stand. She testified to receiving a telephone call from her son (a youth, eighteen years old) at 12:20 A.M. and picking him up at the police station. The witness said Horrigan sounded clear and direct on the phone; on the drive home about 2 A.M. he appeared angry and upset, but sober. With the close of the mother's redirect examination, the presiding judge, Judge Sragow, recessed the case for the day. A transcript from the tape for the day ran to but eighty-two pages.

As the trial was about to resume the next morning, the first justice of the court entered the courtroom and made an announcement declaring a mistrial as follows:

> "Good morning, ladies and gentlemen. I'm Judge Sherman and I'm the First Justice of this Court."

> "Regretfully, about 30 minutes ago we were informed of a medical emergency in Judge Sragow's family, as a consequence of which this case cannot go forth."

"I'm required, under the rules of court, to declare a mistrial. That means that this case for these purposes at this point in time is over and that the parties will have to start all over again, depending upon what the schedule of the session is. And that, I would assume, you would arrange, please, with the clerk. The Jury of Six office will reschedule the case."

"I have no idea as to the nature of the emergency but it's the — I've been working with Judge Sragow now since the day of her first appointment and I'll tell you it's the first day she's ever missed work."

"I'm sorry for your inconvenience but you're excused at this point. And if counsel will see the clerk, arrangements will be made for your convenience to reschedule the trial."

Before trial commenced on the rescheduled day, April 26, 1995, the defendant moved for dismissal on double jeopardy grounds. The motion was denied by Judge Sragow in chambers. Another judge presided at trial. The prosecution called Officers Marchionda and Brennan, as before. Now the prosecution called a third witness, the booking sergeant, Joseph Thibodeau. Thibodeau said he believed Horrigan was drunk during the booking; on reaching his cell, Horrigan fell asleep. The defense, following the mother's testimony, put Horrigan on the stand. He admitted to having had two beers earlier that evening but denied having been intoxicated: he was very tired, he said, he had done eight hours work stacking rocks as a mason's assistant.

This second trial ended the day it began. The jury found the defendant guilty of driving under the influence and speeding. He was sentenced to one year's probation with a program of alcohol evaluation and one year's loss of license; he was fined for speeding. The defendant appeals from the judgment of conviction, claiming error in the denial of his double jeopardy claim.

1. *Manifest necessity.*[1] Where jeopardy has attached — as it did here when the first jury were empaneled and sworn, see

---

[1] The Fifth Amendment's prohibition of double jeopardy — "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb" — applies to the States through the Fourteenth Amendment.

*Collins* v. *Commonwealth*, 412 Mass. 349, 352 (1992) — a judge may not declare a mistrial with a prospect of second jeopardy except for "manifest necessity," and that limited power is to be used with "greatest caution" and for "very plain" reason. So said Justice Story in a famous passage of *United States* v. *Perez*, 22 U.S. (9 Wheat.) 579, 580 (1824): "[T]he law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes."

In light of the importance to the defendant of the right to be free of exposure to a second jeopardy,[2] the burden of justifying a mistrial purporting to rest on manifest necessity falls on the Commonwealth. See *Arizona* v. *Washington*, 434 U.S. 497, 505 (1978). An appellate court "shall be deferential to the trial judge's exercise of discretion in ruling that a 'manifest necessity' exists for a mistrial 'only if it is clear from the record that the judge has given careful consideration to the available alternatives and to the defendant's interest in having the trial concluded in a single proceeding.' " *Commonwealth* v. *Steward*, 396 Mass. 76, 79 (1985), quoting from *Barton* v. *Commonwealth*, 385 Mass. 517, 519 (1982). In *Steward*, the court said, "Two principles emerge for guidance: (1) counsel must be given full opportunity to be heard and (2) the trial judge must give careful consideration to alternatives to a mistrial." 396 Mass. at 79.

In the present case, neither of the "principles" was

*Benton* v. *Maryland*, 395 U.S. 784, 793-796 (1969). The common law of Massachusetts has long provided similar protection. *Commonwealth* v. *Cassidy*, 410 Mass. 174, 176 (1991).

[2] "Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed." *Arizona* v. *Washington*, 434 U.S. 497, 503-504 (1978).

observed. The statement of the first justice was sudden, brief, and unexpected, neither preceded nor accompanied by discussion with counsel. There was no consideration of alternatives to handling the situation less drastic than mistrial. Indeed, the first justice's statement that he was required by rules of court to order a mistrial indicates that he was impervious to possible alternatives.[3] As in *Steward,* where "the judge declared a mistrial because he thought that he was compelled to do so," *id.* at 77, the defendant's constitutional right was infringed when it appeared that reasonable alternatives might exist. Thus it could have been ascertained upon brief continuance when Judge Sragow might become available — conceivably quite soon, as the emergency was in the family and likely not her own. See *Commonwealth* v. *Steward,* 396 Mass. at 79-80; *Collins* v. *Commonwealth,* 412 Mass. at 351-352; contrast *United States* v. *Lynch,* 598 F.2d 132, 133-136 (D.C. Cir. 1978), cert. denied, 440 U.S. 939 (1979). Another possibility was that, upon discussion, the defendant might have consented to having another judge of the court, if available, come in and continue with and complete the trial. See Mass. R.Crim.P. 38(a), 378 Mass. 916 (1979), "Disability of Judge":

> "If by reason of death, sickness, or other disability the judge before whom a jury trial has commenced is unable to proceed with the trial, any other judge of that court or properly assigned to that court, upon certifying in writing that he has familiarized himself with the record of the trial, may proceed with and finish the trial."[4]

2. *Consent.* The Commonwealth argues that, even if

---

[3]It is not clear what rule or rules of court the judge had in mind. As indicated below, Mass.R.Crim.P. 38(a) provides a means of continuing the trial rather than aborting it by a declaration of mistrial.

[4]In *Commonwealth* v. *Carter,* 423 Mass. 506 (1996), the court considered the applicability of rule 38(a) to situations where the defendant does not consent to the substitution. Any difficulty with such a forced expedient are naturally relieved where the defendant consents. See Reporters' Notes to the rule, second paragraph (Mass. Ann. Laws, Rules of Criminal Procedure at 574 [Law Co-op. 1979]); and see the *Carter* case at 509 n.2:

"Many defendants may prefer the continuation of trial. That course reduces legal costs that the nonindigent defendant bears personally. If the defendant is not free on bail there is also an incentive to hasten any possible acquittal and resulting release from custody. The defendant may prefer the substitute over the original judge or believe that the case is proceeding fa-

manifest necessity did not exist, the defendant's constitutional claim should fail because his counsel "consented" to the mistrial by not registering an objection at the time. The Commonwealth points to the moments during which the first justice spoke — more particularly, perhaps, the interval between the speaker's third paragraph and the end of his statement — as time in which the defendant could have considered, and then uttered an objection. This underestimates or ignores the difficulty of reaching a decision (in which the defendant has an evident personal stake) whether the defense would be advantaged or the opposite by a second trial: the possibilities ahead (such as the appearance of a new prosecution witness) cannot be instantly calculated. Therefore, to equate silence with "consent" when the occasion comes abruptly and unexpectedly seems quite unwise. And an examination of the decisions shows that, where silence in the face of a declaration of mistrial has been held to indicate consent, the total situation was such that the defendant could reasonably have anticipated that the issue of a mistrial would arise and could prepare himself for the event; silence could then be plausibly read as acquiescence.[5] Otherwise, where there was not such an opportunity,[6] our cases show that consent is not lightly inferred from silence.[7]

---

vorably. These incentives may reduce the number of cases in which substitution, rare in and of itself, is contested."

[5]See, as typical, *United States* v. *DiPietro*, 936 F.2d 6, 9-11 (1st Cir. 1991): defendant's silence (absence of objection) was taken as consent to the judge's declaration of mistrial where all were aware of errors several hours earlier at trial and possible curative instructions had been discussed at conference; defense counsel "should have anticipated the possibility of a mistrial and been prepared to object" (at 11). Similar cases are *United States* v. *Goldstein*, 479 F.2d 1061, 1066-1067 (2d Cir.), cert. denied, 414 U.S. 873 (1973); *United States* v. *Puleo*, 817 F.2d 702, 703-705 (11th Cir.), cert. denied, 484 U.S. 978 (1987); *Camden* v. *Circuit Court*, 892 F.2d 610, 618 (7th Cir. 1989), cert. denied, 495 U.S. 921 (1990); *United States* v. *Ham*, 58 F.3d 78, 83-84 (4th Cir.), cert. denied, 116 S. Ct. 513 (1995).

[6]See, as typical, *United States* v. *White*, 914 F.2d 747, 754 (6th Cir. 1990): Silence was not considered to amount to consent, and second trial was barred as double jeopardy, where the judge's brief declaration of mistrial took the party by surprise and he "had no advance warning that a mistrial was going to be declared." For similar cases, see *Gori* v. *United States*, 367 U.S. 364, 365 & n.6 (1961); *United States* v. *Jorn*, 400 U.S. 470, 487 (1971); *United States ex rel. Russo* v. *Superior Ct.*, 483 F.2d 7, 17 (3d Cir.), cert. denied, 414 U.S. 1023 (1973); *United States* v. *Buljubasic*, 808

A further consideration. Here, the first justice stated that he was bound by rules to order the mistrial, and he ordered it peremptorily. He said, "I'm required, under the rules of court, to declare a mistrial . . . . [T]his case . . . at this point in time is over . . . ." The defendant had a basis for believing that an objection would be futile. In like cases, defendants have not been held obliged to make futile gestures, and silence has not been taken to amount to consent.[8]

We note, finally, that "[t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed." *United States* v. *Dinitz*, 424 U.S. 600, 609 (1976). The question whether the defendant has indeed retained control by a consent real rather than fictitious is "important." On this question the Commonwealth bears the burden, see *Commonwealth* v. *Donovan*, 8 Mass. App. Ct. 313, 315 (1979), and in this instance has not carried it.

*The judgment is reversed, the verdict is set aside, and the complaint is to be dismissed.*

---

F.2d 1260, 1265-1266 (7th Cir.), cert. denied, 484 U.S. 815 (1987); *Lovinger* v. *Circuit Ct.*, 845 F.2d 739, 744 (7th Cir.), cert. denied, 488 U.S. 851 (1988).

[7]See *Jones* v. *Commonwealth*, 379 Mass. 607, 621 (1980) (defendant's consent to mistrial not inferred from a motion for mistrial he made at an earlier stage of trial); *Commonwealth* v. *Cassidy*, 410 Mass. 174, 177 & n.2 (1991) (not inferred where defendant did not formally object to declaration of mistrial but asked judge to avoid mistrial); *Commonwealth* v. *Donovan*, 8 Mass. App. Ct. 313, 316-317 (1979) (not inferred where in earlier conference defendant had opposed mistrial but did not object to declaration of mistrial); *Commonwealth* v. *Phetsaya*, 40 Mass. App. Ct. 293, 297-298 (1996) (not inferred despite defense counsel's affirmative agreement to mistrial because counsel was likely intimidated into acquiescence by judge).

[8]See *Commonwealth* v. *Donovan*, 8 Mass. App. Ct. 313, 316-317 (1979); *Glover* v. *McMackin*, 950 F.2d 1236, 1240 (6th Cir. 1991).