HERMAN JONES *vs.* COMMONWEALTH.

Suffolk. October 4, 1979. — January 24, 1980.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, LIACOS, & ABRAMS, JJ.

*Constitutional Law,* Double jeopardy. *Practice, Criminal,* Double jeopardy, Mistrial, Severance.

Where the judge at a criminal trial failed to consider alternatives, including severance, before declaring a mistrial, over the defendant's objection, because of several heated exchanges between the judge and the codefendant's counsel, the record did not support a conclusion that there was manifest necessity for the mistrial as to the defendant's case, and the Commonwealth was, therefore, barred on double jeopardy grounds from reprosecuting the defendant. [615-618]

If a judge at a criminal trial decides to rest a decision to declare a mistrial on a defendant's motion made at an earlier stage of the trial, he must first inquire whether the defendant wishes to maintain the motion. [621-622]

Appellate deference will be accorded a trial judge's discretionary determination that manifest necessity for a mistrial exists only if the record reflects that the judge gave reasoned consideration to the various available alternatives as well as to questions of fairness before declaring a mistrial. [622]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on September 25, 1978.

Upon transfer to the Appeals Court the case was reported by *Grant,* J. After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Willie J. Davis* for the plaintiff.

*Jeremiah P. Sullivan, Jr.,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J.   We granted Herman Jones's request for further appellate review [1] to consider in what circumstances a defendant, whose trial has been interrupted by a mistrial over his objection, may be retried consistent with the guaranties against double jeopardy provided by the law of this Commonwealth and the Fifth Amendment to the Federal Constitution.   See *Thames* v. *Commonwealth,* 365 Mass. 477, 479 (1974); *Costarelli* v. *Commonwealth,* 374 Mass. 677, 681-682 (1978); *Benton* v. *Maryland,* 395 U.S. 784, 794-795 (1969).   See also G. L. c. 263, §§ 7, 8, 8A, and G. L. c. 277, § 75.   Jones asserts that the Commonwealth is barred from reprosecuting him because in his case there was no "manifest necessity" for declaring a mistrial over his objection and after the evidence had been completed.   We agree.

We summarize the facts.   Jones and a codefendant, Frank Rivera, were indicted for the murder and armed robbery of William Dowling.   Each defendant was also indicted for both armed robbery and assault and battery upon George Miller by means of a dangerous weapon.

The trial of the two defendants, who were represented by separate counsel, commenced in mid-summer.   Among the many motions filed by Jones were a motion for severance and a motion for individual interrogation of the jurors. Jones also requested that the judge ask approximately thirty-one questions in addition to the statutory questions. See G. L. c. 234, § 28.   Both motions were denied and exceptions noted. [2]

During the empanelment of the jury the judge made a number of caustic remarks about both defense counsel, [3] apparently prompted by their conduct.   Although Jones's motion for additional questioning of the jurors was initially

---

[1] See *Jones* v. *Commonwealth,* 7 Mass. App. Ct. 383 (1979).

[2] Rivera orally joined in Jones's motion.

[3] A few of the judge's remarks were also addressed to the prosecutor.

denied, the judge finally decided to ask the questions proposed by Jones. In the course of reading the questions to the jurors as a group, the judge and Jones's counsel engaged in some verbal clashes. The most serious exchange between the judge and Jones's counsel which occurred during the jury empanelment tended to disparage Jones's counsel's legal ability.[4]

Rivera's counsel objected to the judge's remarks directed at him and attempted to make a motion which the judge declined to hear until "after court." After the jurors were excused Rivera's counsel made an oral motion for mistrial in which Jones's counsel joined.[5] The judge found that the conduct of both counsel was "scandalous" and denied the oral motion for mistrial.[6]

---

[4] COUNSEL FOR DEFENDANT RIVERA: "May I chat with learned counsel?"

THE JUDGE: "I believed you checked with [Jones's counsel] if he qualifies to that appellation."

COUNSEL FOR DEFENDANT JONES: "Your Honor, I have to object to that. You and I know very well that I am very competent, and I don't want to give the jury the impression that I am not."

THE JUDGE: "You know something, let them listen to you. Go ahead."

[5] COUNSEL FOR DEFENDANT RIVERA: "Your Honor, Defendant Rivera, at this time, makes an oral motion for mistrial, and I base the mistrial, if your Honor pleases, on the fact that it has come to my attention, as I marshalled the comments, and the fact that colloquy, if you would, between counsel in the court, that the comments of the Court have prejudiced the jury already at this moment against the Defendant, and the seriousness of the Defendant's counsel perusal or pursuit of the Defendant's case, and I really don't think that the idea of whether or not the Defendant's lawyer is deaf or tosses a pencil or —"

THE JUDGE: "I dispute that. I say that is subterfuge, . . . You chose to say you were straining your right ear to hear. I don't believe you.

COUNSEL FOR DEFENDANT RIVERA: "May I say, your Honor —"

THE JUDGE: "You may say anything you want."

COUNSEL FOR DEFENDANT RIVERA: "May I say, your Honor, the time the Court made a comment about my straining my head or talking, I was not in fact talking to [counsel for Jones], and if I were talking to [him], I would be more than pleased to say so."

[6] THE JUDGE: "I consider both your conduct scandalous, and your attitude about the whispering, the humor that [counsel for Jones] seems to find in everything, I don't find so. I thought I might restrain you two,

Jones filed a written motion for mistrial the next morning.[7] No references to the written motion are found in the record until the discussion, six days later, as to whether a mistrial ought to be granted. At the start of the third day of trial, just prior to the Commonwealth's opening, the judge

and perhaps bring you to the seriousness of the charges facing these two Defendants. . . ."

THE JUDGE: "Denied; save both exceptions."

COUNSEL FOR DEFENDANT JONES: "I would like to put on the record, your Honor, you said we seemed to be smiling. Your Honor may not be aware of the situation, but your Honor says a lot of things which makes a lot of people smile a lot. Now, perhaps your Honor does not mean to be humorous, but some people take it to be. But your Honor should be aware that we do not take this lightly."

THE JUDGE: "Perhaps I'm mistaken. If so, I apologize to both of you. "Mistrial denied; exception saved."

[7] The motion read as follows:

"Now comes the defendant in the above entitled matter and moves that the court grant a mistrial. As reason therefor the defendant states the following: The defendant filed a written motion for examination of prospective jurors in accordance with G. L. c. 234, § 28. This statute provides that upon such motion the examination 'shall be conducted individually and outside the presence of other persons about to be called as jurors or already called.' The motion was denied. The defendant also requested that certain questions be asked of prospective jurors. The court, in the beginning, declined to do so, and exceptions were saved. Following the luncheon recess, and after certain jurors had been selected who could not then be challenged peremptorily, the court decided to read the questions of counsel to the entire venire. In doing so, it appeared to counsel, the court was making light of the questions. Of course, this manner would not be reflected in the record. The court also made open comments about certain grammar used in the questions which the defendant feels prejudiced him in the eyes of the prospective jurors.

"Additionally, the remarks to counsel reflecting a belief that the matter was not being taken seriously prejudiced the defendant in the eyes of the prospective jurors. Such remarks came as counsel smiled; but the smiles were produced by other remarks of the court which were funny, though, not necessarily intended to be funny. Further, counsel was not the only person to smile at the remarks.

"Lastly, the defendant was prejudiced by remarks which indicated that counsel was not competent. The defendant does not contend that these remarks by the court were intentional; nor does the defendant contend that the court in any way desired to convey that counsel was not competent. The defendant does contend that the remarks being heard by prospective jurors who did not know counsel could have been interpreted to mean that counsel did not know what he was doing."

instructed the jury to disregard any colloquy between counsel and the court.[8]

In its opening the Commonwealth claimed that it would prove beyond a reasonable doubt that Jones robbed one George Miller and committed an assault and battery by means of a dangerous weapon (a knife) on Miller. The Commonwealth alleged that Jones would be identified as the person who stabbed one William Dowling in the chest. The Commonwealth said that Miller would "positively identif[y] Herman Jones as the . . . person who had robbed him [Miller] and put the knife to his [Miller's] neck, and whom he had seen run from the scene" where Dowling was stabbed.

Contrary to the Commonwealth's expectations as expressed in its opening, Miller did not identify Jones as being at the scene of the crime. As a result of the failure of the Commonwealth's proof, counsel for Jones said little or nothing for the first two days of testimony. Counsel for Jones, however, renewed his motion for severance when it appeared that cross-examination by Rivera's counsel might harm his client's interests.[9] Although Jones's counsel was

---

[8] "[A]ny colloquy, words back and forth, between counsel and me, one or the other or both, or the district attorney, as the trial develops, certainly is nothing that you would consider or have affect you in any way as to the rights of these defendants. Certainly, you would not interpret anything that this Court might say in the course of this trial in any way as infringing on your powers, which are finally to decide the facts in this case. You have a right to resent any intrusion by this judge or any other judge in your function, which is to determine in the final analysis what happened, and what the connection if any there be, was between these two defendants and the alleged crimes that are named in the indictments."

[9] THE JUDGE: "First time you've spoken in two days."
COUNSEL FOR DEFENDANT JONES: "I have had no occasion to speak before, your Honor."
THE JUDGE: "Go ahead. What do you want to say?"
COUNSEL FOR DEFENDANT JONES: "I would simply say, your Honor, if [counsel for Rivera] pursues that line of questioning that he just intimated to the Court, I would renew, or ask to renew, my motion for severance, because it would definitely be prejudicial to —"
THE JUDGE: "Well, I'll deny your motion to sever. . . ."

silent during the Commonwealth's case, there were frequent exchanges between the judge and Rivera's counsel.[10]

During the Commonwealth's presentation of its case-in-chief the judge ruled favorably on an evidentiary request made by Jones's counsel. Jones obtained directed verdicts at the close of the Commonwealth's case on two of the four indictments.

Jones presented evidence which, if believed, would have shown him to be elsewhere at the time of the crime. After the Commonwealth and the defendant had presented their evidence,[11] Rivera's counsel began presenting Rivera's defense. At this time, the colloquies between Rivera's counsel and the judge escalated both in frequency and hostility. Rivera's counsel was continually admonished for asking leading questions during Rivera's direct examination. Finally, the judge sharply rebuked Rivera for interjecting a statement while the judge was discussing the admissibility of an answer with his attorney.[12]

---

[10] Rivera's counsel was continually instructed to avoid repetitive questions, and to avoid repeating the witness's answers. The judge engaged in some direct questioning of witnesses and made comments disparaging counsel's skill. Moreover, at side bar the judge threatened to hold counsel in contempt, and in open court he said he would deal "summarily" with Rivera's counsel.

[11] The defendant received the judge's permission to reopen if another witness became available.

[12] The only exchange between the judge and Jones's counsel even mildly similar to the exchanges between the judge and Rivera's counsel occurred toward the end of Jones's direct examination.

COUNSEL FOR DEFENDANT JONES: "Now, after you were arrested, Mr. Jones, did you say anything to the police?"

THE DEFENDANT: "No."

COUNSEL FOR DEFENDANT JONES: "Were you asked any questions by the police?"

THE DEFENDANT: "Yes."

COUNSEL FOR DEFENDANT JONES: "Did you sign anything?"

THE JUDGE: "All three of those questions are all leading. I'll exclude them and the answers."

COUNSEL FOR DEFENDANT JONES: "I thought I was trying to be brief and that was the quickest way to do it, Judge."

THE JUDGE: "It's also advantageous, I think."

COUNSEL FOR DEFENDANT JONES: "Oh, Judge. He — well, all right. All right."

At this point, the judge ordered the jury to take a recess, and Rivera's counsel moved for a mistrial. Jones's attorney objected to a declaration of a mistrial at that time. The prosecutor indicated he was prepared to go forward. The judge informed Jones's lawyer that he was allowing the previous motion for a mistrial, which had been taken under advisement. Jones's counsel then formally waived the earlier motion, explaining that it had been based on the events occurring during empanelment and that any prejudice arising in that regard had since been abated.[13]

In responding to those objections, the judge said, "I just don't think if one defendant is removed for whatever reason, that it should go, and I'll give you a mistrial, which you asked for originally." The judge further noted that he had granted the motion before it was waived. He went on: "Beyond you, . . . and beyond me and beyond everybody, stand Rivera and Jones, and right now I'll take my share of it. Things

---

[13] COUNSEL FOR DEFENDANT JONES: "Before you make that final, Judge, let me say this. I filed a motion based on what transpired during the selection of the jury.

THE JUDGE: "You have been happy since?"

COUNSEL FOR DEFENDANT JONES: "Absolutely. And I don't think at this time the Defendant ought to be held to press that motion where he wants to waive it under the circumstances. If the Court had acted on it at the time, I think that would have been —"

THE JUDGE: "I took them under advisement, and there was no objection at that time."

COUNSEL FOR DEFENDANT JONES: "No objection?"

THE JUDGE: "Yes."

COUNSEL FOR DEFENDANT JONES: "I didn't even get a chance to say anything about the motions before — I was told that you had it under advisement. I didn't get a chance to say not one thing about it. More importantly, Judge, the basis for a mistrial was based on what happened during the impanelling of the jury. You are allowing [counsel for Rivera's] motion that he just made, which is based on entirely different matters.

THE JUDGE: "I am allowing both motions which were filed at the outset."

COUNSEL FOR DEFENDANT JONES: "Judge."

THE JUDGE: "I note your exception, I can't do any more than that."

COUNSEL FOR DEFENDANT JONES: "Judge."

THE JUDGE: "You want to talk to [Rivera's counsel] and you both want to go forward, that's all right with me."

have got out of hand and perhaps they were from the beginning, so with that in mind, I allow both your motions which were filed." The record reveals that the judge was concerned about the possibility of jury bias or prejudice.[14]

Jones's counsel asked for a severance which the judge allowed saying "I don't think anybody should have to go through that twice." [15] The next day, however, the judge reversed his ruling granting a severance.[16]

---

[14] This was most clearly demonstrated by the judge's explanation of the mistrial to the jury, which we quote in full.

"Now ladies and gentlemen of the jury, I am reluctant and sorry to tell you that at the outset of this trial certain motions were filed by counsel, motions for mistrial, because of various exchanges, if you will, between counsel and me, and I took those motions under advisement, and as the trial progressed, I think that there have been issues introduced into this case that might hurt you or hinder you in the determination of the sole issue of this case, which is the guilt or innocence of these defendants. I take no small part of it myself for impatience, and perhaps interfering, but on the chance that you might have feelings one way or another, whether you dislike the Judge or dislike the lawyers or what have you, I'm going to allow a mistrial. I don't think I am concerned [*sic*] there are issues in here that might disturb you, other than the main issue, which is, did the defendants commit these crimes. So there will be a mistrial and scheduling at another day.

"So, I'm sorry and I know you are, but I think for [*sic*] the ends of justice would be much better served if perhaps a different court heard these matters. All right.

"Thank you very much."

[15] COUNSEL FOR DEFENDANT JONES: "Well, would you do me this favor, and give me a severance standing now so I won't have to start this all over again?"

THE JUDGE: "I will now allow your motion to sever."

COUNSEL FOR DEFENDANT JONES: "Thank you very much."

THE JUDGE: "Do you want to be heard on this, Mr. Sullivan? I don't think anybody should have to go through that twice. I'll allow the motion to sever."

[16] THE JUDGE: "Mr. Davis, in the heat of the moment last night, I allowed a motion to sever. In view of these two dismissals today, the only other altercation where this man had a go-around on the ground by himself on admission, and by the allegations of the Commonwealth and someone else says Poochie was there, I'm not going to sever those cases. There would be no point in it other than the convenience of counsel. I understand your emotion, and very heartfelt compassions, but I think in the interest of trying anything twice, it should be tried together, unless you want to separate them, . . . Do you agree with the motion?"

THE PROSECUTOR: "No, your Honor."

Thereafter, Jones's motion to dismiss the remaining indictments on double jeopardy grounds was denied. Pursuant to G. L. c. 211, § 3, Jones sought a stay of retrial claiming that to reprosecute him would violate the common law of this Commonwealth against being twice in jeopardy as well as the prohibition against double jeopardy contained in the Fifth Amendment to the United States Constitution. See *Costarelli* v. *Commonwealth,* 374 Mass. 677, 681-682 (1978). Accord, *Abney* v. *United States,* 431 U.S. 651, 654-662 (1977). A single justice of this court granted the stay and transferred the matter to a single justice of the Appeals Court.

The single justice of the Appeals Court reserved and reported the question of "whether the Commonwealth is barred by the double jeopardy clause of the Fifth Amendment to the Constitution of the United States from proceeding with the trial of Jones . . . on the criminal indictments at issue, or, alternatively, whether the record as a whole reveals that there was 'manifest necessity' for the mistrial granted by the trial judge over the objection of the defendant." *Jones* v. *Commonwealth,* 7 Mass. App. Ct. 383 (1979).

The Appeals Court concluded that Jones did not consent to the mistrial by filing a motion for mistrial based on the jury empanelment, that there was no judicial overreaching[17] and that on the record the Commonwealth had demonstrated a "manifest necessity" for the mistrial. *Arizona* v. *Washington,* 434 U.S. 497, 505 (1978). We agree with the Appeals Court that Jones did not consent to the mistrial. However, we think that the record does not support a con-

---

[17] The Appeals Court found that "[t]he record does not show that the judge's actions were 'motivated by bad faith or undertaken to harass or prejudice' the defendant." *Jones* v. *Commonwealth,* 7 Mass. App. Ct. 383, 396 (1979), quoting from *United States* v. *Dinitz,* 424 U.S. 600, 611 (1976). Neither the Commonwealth nor the defendant disagrees with the Appeals Court's conclusion that there was no judicial overreaching. On the view we take of Jones's claim we do not reach the issue of judicial overrreaching. The record reveals, however, that the judge was extremely impatient, even if we assume that counsels' behavior was irritating and their method of examining witnesses inept.

clusion that there was "manifest necessity" for the mistrial, and we hold that the Commonwealth is barred from reprosecuting Jones.

Jones asserts that there was no "manifest necessity" for the mistrial in his case. See *United States* v. *Perez,* 22 U.S. (9 Wheat.) 579, 580 (1824). Jones claims that since both the Commonwealth and the defendant had rested, severance was the appropriate remedy. Severance, Jones contends, would have permitted him to continue with the first tribunal selected to hear his case, a tribunal he believed to be "favorably disposed to his fate." *United States* v. *Jorn,* 400 U.S. 470, 486 (1970).[18] Moreover, he contends that a severance would have also served "the public interest in insuring that justice is meted out to offenders." *United States* v. *Scott,* 437 U.S. 82, 92 (1978). *Arizona* v. *Washington,* 434 U.S. 497, 506 (1978). *Downum* v. *United States,* 372 U.S. 734, 736 (1963). *Wade* v. *Hunter,* 336 U.S. 684, 689 (1949). See Note, Mistrials and Double Jeopardy, 15 Am. Crim. L. Rev. 169, 172, 182-183 (1977). We agree.

There is no hard and fast rule as to whether severance should be granted or denied in joint trials.[19] Courts which have declined to sever and have upheld the declaration of a mistrial as to all defendants have based their decision, first, on the complexity of the case, and second, on the proposition that in a complex, multi-defendant case, fairness to all the defendants may preclude severance. *United States* v. *Smith,* 390 F.2d 420, 422-424 (4th Cir. 1968) (several defendants). *Oelke* v. *United States,* 389 F.2d 668, 672 n.5 (9th Cir. 1967), cert. denied, 390 U.S. 1029 (1968) (three defendants). *United States* v. *Chase,* 372 F.2d 453, 465-466 (4th Cir.), cert. denied, 387 U.S. 907 (1967) (six defend-

---

[18] Although Mr. Justice Harlan's opinion in *Jorn* was a plurality opinion of four Justices, we rely on it as one of the principal cases setting the parameters of the protection afforded by the double jeopardy clause. *Thames* v. *Commonwealth,* 365 Mass. 477, 479 n.3 (1974).

[19] The problems arising from considering the propriety of mistrial in a joint trial have not been addressed by the Supreme Court. *United States* v. *Glover,* 506 F.2d 291, 295 (2d Cir. 1974).

ants). See *Whitfield* v. *Warden,* 486 F.2d 1118, 1123-1124 (4th Cir. 1973), cert. denied, 419 U.S. 876 (1974) (two defendants).

Jones claims that his case was relatively simple and that the judge erroneously denied the severance because it would be "merely for the convenience of counsel." See note 16, *supra.* In essence, Jones argues that there is no basis on this record to deny a severance for reasons of complexity or fairness to all defendants, and that the judge's decision therefore was not based on "manifest necessity."

We think that the deep respect due a defendant's right to a single prosecution required serious consideration of severance as the appropriate remedy. Although the judge's denial of a severance at the start of the trial was well within his discretion, judicial discretion is much narrower after the trial starts. "Rulings on motions for severance are governed by a wide discretion and have a strong basis in considerations of trial efficiency and convenience. But a much more restricted discretion controls where double jeopardy is concerned, since this is a fundamental constitutional right." *Scott* v. *United States,* 202 F.2d 354, 356 (D.C. Cir.) (Bazelon, J., dissenting), cert. denied, 344 U.S. 879, and sub nom. *Bayne* v. *United States,* 344 U.S. 881 (1952).[20] See Note, Jeopardy and Mistrials, 125 U. Pa. L. Rev. 449, 528 (1977). "Many and unpredictable are the sources of conflicting rights among themselves in the trial of co-defendants, especially in conspiracy cases. We are reluctant to open the field to mistrial for the benefit of one defendant at the cost of the valued right of another defendant to go to the jury of his selection . . . ." *United States* v. *Glover,* 506 F.2d 291, 299 (2d Cir. 1974) (four defendants). Cf. *United States* v. *Alford,* 516 F.2d 941, 947 (5th Cir. 1975); *Thomas* v. *Beasley,* 491 F.2d 507, 509-510 (6th Cir.), cert. denied, 417 U.S. 955 (1974). We

---

[20] In *Scott,* a mistrial as to all four defendants was held proper when the trial judge determined that counsel for three of the four had been improperly admitted pro hac vice. Despite an opportunity to do so, the defendant Scott had not requested a mistrial.

think that these cases are controlling in the circumstances of Jones's case, and that severance was the appropriate remedy.

Moreover, the record reveals that the judge failed to give either Jones's counsel or the prosecutor a "full opportunity to explain their positions on the propriety of a mistrial." *Arizona* v. *Washington,* 434 U.S. 497, 515-516 (1978). In contrast to the trial judge in *Arizona* v. *Washington,* the judge in the present case cannot be said to have "acted responsibly and deliberately," and to have "accorded careful consideration to respondent's interest in having the trial concluded in a single proceeding." *Id.* at 516. The judge's remarks indicate that he viewed severance as an inappropriate alternative in any case involving codefendants. See note 16, *supra*. The judge's failure to explore the alternatives before declaring the mistrial for Jones precludes us from upholding his decision as an exercise of sound discretion. *Arizona* v. *Washington, supra* at 516. See *United States* v. *Pierce,* 593 F.2d 415 (1st Cir. 1979) (cautionary instruction as alternative to mistrial); *United States* v. *Sanders,* 591 F.2d 1293 (9th Cir. 1979) (alternative methods of dispelling juror bias not explored); *United States* v. *Starling,* 571 F.2d 934 (5th Cir. 1978) (no argument from counsel as to necessity for mistrial and no consideration of alternatives). Cf. *United States* v. *McCambridge,* 551 F.2d 865, 872 (1st Cir. 1977) (cautionary instruction given when codefendant pleaded during trial).[21]

We agree with the Commonwealth that "[n]either party has a right to have his case decided by a jury which may be

---

[21] Aside from the area of jury prejudice, other cases decided since *Jorn* have similarly emphasized the importance of serious consideration of alternatives to a mistrial. See *Dunkerley* v. *Hogan,* 579 F.2d 141 (2d Cir. 1978), cert. denied, 439 U.S. 1090 (1979) (mistrial improper where continuance was fair, practical, and feasible alternative); *United States* v. *Rich,* 589 F.2d 1025 (10th Cir. 1978) (abuse of discretion where judge discharged jury out of the presence of defendant and prosecutor after a continuance of one and a half months); *United States* v. *McKoy,* 591 F.2d 218 (3d Cir. 1979) (duty of appellate court to see that alternatives to declaring a mistrial were completely canvassed so as to avoid double jeopardy bar); *United States* v. *Lynch,* 598 F.2d 132 (D.C. Cir. 1978) (defense counsel must be given effective opportunity to explore alternatives).

tainted by bias." *Arizona* v. *Washington, supra* at 516. See *Thompson* v. *United States,* 155 U.S. 271 (1894); *Simmons* v. *United States,* 142 U.S. 148 (1881); *Commonwealth* v. *McCormick,* 130 Mass. 61, 62-63 (1881) (all concerning individual juror bias). Our conclusion that reprosecution is barred does not trample on the right to trial by an impartial jury, as suggested by the Commonwealth. That principle does not give the judge unlimited discretion to declare a mistrial over a defendant's objection. Rather, it invites a judge to consider a variety of factors in an effort to strike a proper balance between the conflicting interests. We think the judge erred by failing to consider the various alternatives to a mistrial.

The Commonwealth claims that since the constant clashes between defense counsel and the bench infused extraneous issues into the case, reversal on appeal would be a certainty, and hence severance was not an appropriate remedy. See *Illinois* v. *Somerville,* 410 U.S. 458, 469, 471 (1973).[22] The Commonwealth's position overlooks the possibility of an acquittal.[23] Moreover, the Commonwealth's position also overlooks the many factors that must be considered before a mistrial is declared, such as the right to have a particular tribunal decide a person's fate once and for all, as well as

---

[22] The cases cited by the Commonwealth in support of its argument are neither persuasive nor controlling. The Commonwealth relies on *United States* v. *Guglielmini,* 384 F.2d 602 (2d Cir. 1967), and *People* v. *Thomas,* 15 Ill. 2d 344, cert. denied, 359 U.S. 1005 (1959). In *United States* v. *Guglielmini, supra,* trial errors included not only statements by the judge serving to demean defense counsel and cast unfavorable light on the defense, but also admission of irrelevant, prejudicial evidence, improper argument by the prosecutor on the basis of that evidence, and possibly confusing instructions on reasonable doubt. The court based its holding on the cumulative effect of these errors. *People* v. *Thomas, supra,* does not use any of the analysis dictated by Supreme Court decisions since 1959. Compare *Commonwealth* v. *Lewis,* 346 Mass. 373, 378-380 (1963), cert. denied, 376 U.S. 933 (1964).

[23] As we read the record, a second trial would enhance the possibility of Jones's conviction since he would not be able to make a tactical use of the Commonwealth's inability to keep its word to the jury as outlined in its opening. A second jury would not hear Miller's testimony or know that Miller failed to identify Jones as the person seen running from Dowling.

the right of an accused to retain control over the proceedings in the event of error. See *United States* v. *Scott,* 437 U.S. 82, 93-94 (1978); *United States* v. *Dinitz,* 424 U.S. 600, 609 (1976); *United States* v. *Jorn,* 400 U.S. 470, 486 (1970).

The Commonwealth also argues that a defendant who misbehaves should not be able to escape retrial if the judge thereby declares a mistrial. We agree. "It would be a reproach to the administration of justice if a defendant through his counsel, could pollute the atmosphere of a trial and then turn this to his own advantage on appeal." *Commonwealth* v. *Lewis,* 346 Mass. 373, 379 (1963), cert. denied, 376 U.S. 933 (1964). The short answer to this contention, however, is that the record does not reflect misconduct on the part of Jones's counsel sufficient to penalize Jones or to deprive him of his right against more than one prosecution.

Although the judge in the instant case purported to act pursuant to the mistrial motion made by Jones at the close of the first day of trial, the Commonwealth does not contend that Jones consented to the mistrial. Relying on *Lee* v. *United States,* 432 U.S. 23 (1977), and *United States* v. *Gentile,* 525 F.2d 252 (2d Cir. 1975), cert. denied, 425 U.S. 903 (1976),[24] the Commonwealth does, however, contend that by not requesting a hearing and a ruling on his written motion for a mistrial Jones contributed to the ultimate declaration of a mistrial. We disagree.

The oral motion was denied at the time it was made. Since the written motion set forth essentially the same grounds, albeit on an elaborated basis, Jones could well have concluded that the written motion had been denied.

---

[24] In *Lee,* defense counsel was keenly aware that the motion to dismiss (treated therein as the functional equivalent of a motion for a mistrial) was under advisement. In *United States* v. *Gentile, supra,* defense counsel had actively participated in a discussion of his codefendants' motion for a mistrial, then refused to join the motion. The trial judge found there was implied consent, and declared a mistrial as to both defendants. The Court of Appeals for the Second Circuit upheld the decision on the basis of *Gori* v. *United States,* 367 U.S. 364 (1961) (mistrial proper where declared solely for the defendant's interests).

There was no hearing on the written motion at the time it was filed, and the trial went forward as if the motion had been denied.

At the time the mistrial ruling was announced the judge claimed to base his ruling on Jones's earlier written motion. Defense counsel asked to be heard and, at the earliest possible moment, counsel waived the written motion and made it clear that his client's position had changed. "An earlier request for a mistrial may, with the mere passage of time, be considered as having been improvidently made and fortunately denied." *Braxton* v. *United States*, 395 A.2d 759, 769 (D.C. Ct. App. 1978). See *Gershon* v. *Sardonia*, 50 Misc. 2d 423, 425 (N.Y. Sup. Ct. 1966) ("During the course of a trial the picture constantly changes and a motion made and denied may eventually benefit the party who moved"); *United States* v. *McCambridge*, 551 F.2d 865, 872 (1st Cir. 1977) ("concerns which led counsel to file the motion[s] . . . [may be] dissipated in light of later events . . .").

A defendant is entitled to withdraw a motion for mistrial which is initially not granted and then later revived by the court. If a judge decides to rest the decision to declare a mistrial on a defendant's earlier motion, the judge must inquire whether the defendant wishes to maintain the motion. See Note, Jeopardy and Mistrials, 125 U. Pa. L. Rev. 449, 557 (1977). If the defendant makes it clear in answer to the judge's inquiry that he wishes to withdraw the earlier motion for a mistrial, the judge must then decide whether there is "manifest necessity" for a mistrial over the defendant's objection. If the motion for mistrial is withdrawn by the defendant, the judge may not rely on the earlier request for mistrial as permitting a mistrial by consent.[25] "[W]here the request for mistrial is not granted and the trial proceedings resume, the defendant is again entitled to resume con-

---

[25] Even if a defendant continues to press for a mistrial, if the motion is necessitated by prosecutorial or judicial overreaching, double jeopardy may still bar a second trial. See *United States* v. *Kessler*, 530 F.2d 1246, 1255-1256 (5th Cir. 1976). See also *United States* v. *Davis*, 589 F.2d 904, 905-906 (5th Cir.) cert. denied, 441 U.S. 950 (1979).

trol over the course of those proceedings, a control which would be meaningless if subject to defeasance through a purported grant of a request made prior to the resumption of control." *Braxton* v. *United States,* 395 A.2d 759, 767 (D.C. Ct. App. 1978). See *Commonwealth* v. *Robson,* 461 Pa. 615, cert. denied, 423 U.S. 934 (1975); *United States ex rel. Russo* v. *Superior Court,* 483 F.2d 7 (3d Cir.), cert. denied, 414 U.S. 1023 (1973); *Maes* v. *District Court,* 180 Colo. 169 (1972).

Appellate deference will be accorded the trial judge's discretionary determination that "manifest necessity" exists only if the record reflects that the trial judge gave reasoned consideration to the various available alternatives as well as to questions of fairness before declaring a mistrial. *Arizona* v. *Washington,* 434 U.S. 497, 516-517 (1978). No particular form of words is required. What is compelled is the thoughtful and careful exercise of discretion by a judge before terminating a trial prior to a verdict.

The remaining indictments are to be dismissed by the Superior Court.

*So ordered.*