EDWARD R. BARTON, JR. *vs.* COMMONWEALTH.

Suffolk. March 16, 1981. — April 15, 1981.

Present: HALE, C.J., BROWN, & GREANEY, JJ.

*Practice, Criminal,* Double jeopardy, Mistrial, Severance. *Constitutional Law,* Double jeopardy.

Where, on the third day of a criminal trial, one of the fourteen jurors informed the judge that she had observed a woman whom she knew from school conversing with one of the two codefendants, that she felt for unexplained reasons that her life would be in jeopardy if she remained on the jury, and that she had communicated her fears to a second juror and where, after excusing the two jurors, the judge made no inquiry of the remaining jurors with respect to their knowledge of the incident and its effect on their ability to render an impartial verdict and failed to explore the alternative remedy of a severance as requested by the other defendant, there was no showing of "manifest necessity" for the declaration of a mistrial as to the other defendant over his objection, and the Commonwealth was therefore barred from further prosecution of the indictments against that defendant. [692-697]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on January 29, 1981.

On transfer to a single justice of the Appeals Court, the case was reported by *Brown*, J.

*Walter B. Prince* for Edward R. Barton, Jr.

*Timothy P. O'Neill,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. A single justice of this court has reported the question whether the Commonwealth is barred by the double jeopardy clause of the Fifth Amendment to the Federal Constitution from retrying Edward R. Barton, Jr. (hereinafter the defendant), on two felony indictments after his initial trial terminated in a mistrial. We conclude that there was no "manifest necessity" for the declaration of a mistrial and,

as a consequence, that the defendant's reprosecution is barred.

The defendant and one Joshua Nixon were put to trial on November 18, 1980, before a fourteen person jury in the Superior Court on indictments charging them both with armed robbery and assault and battery by means of a dangerous weapon. During the first two and one-half days of trial, the jury learned the following. On June 3, 1980, the victim, an off-duty Boston police officer, was assaulted and robbed near his home by two men, one of whom was carrying a shotgun and the other of whom was holding what appeared to be a knife. In the course of the incident, the victim disarmed the man with the shotgun, drew his service revolver, and fired a shot which wounded that assailant. This man was apprehended near the scene and identified as Joshua Nixon. The other assailant escaped in a car. This man was subsequently identified by the victim from a photographic array as the defendant Barton.

At the mid-point of the third day of the trial, a court officer reported to the trial judge that he had been approached by a female juror. This juror informed the officer that she had observed a young woman in the courtroom conversing with the defendant Nixon, that she knew the woman, and that she was afraid for her own life. The juror was immediately sequestered and brought to the lobby for examination by the trial judge and counsel. There she indicated that she knew the woman seen with Nixon from a school they had both attended, that she felt (for unexplained reasons) that her life would be in jeopardy if she remained on the jury, and that she had communicated her fears to a second female juror sitting next to her in the box. The trial judge excused her from the panel and instructed her not to speak to any other member of the jury.[1]

---

[1] Counsel for the defendant Barton attempted to ascertain the reason for the juror's fear, as indicated by the following colloquy:

"MR. PRINCE: Your Honor, before this gets out of control, I would like to be heard on this juror before you dismiss her from the case.

At this point, the prosecutor orally moved for a mistrial on the basis of a "tainted jury because of [the] . . . fear that may have been communicated." Barton's counsel objected to the grant of a mistrial,[2] while Nixon's counsel joined in the prosecutor's motion. The trial judge indicated that he intended to declare a mistrial. Barton's counsel repeated his objection.[3] The impasse was temporarily resolved by the prosecutor's suggestion that the second juror be examined.

The juror was brought to the lobby. She confirmed being told by the first juror of the latter's observations of a woman talking to Nixon and about that juror's desire to be excused. She did not know the reasons for her colleague's difficulty, but she had inferred that her companion had become fearful of staying on the case. She indicated that other jurors might have heard the first juror say that she knew the wo-

---

I would just like to add that I was trying to find out the basis of her fear, which has never come out.

She said she didn't know him at all.

She did not indicate that she had had a run-in with him or a run-in with this woman in the past.

THE COURT: No.

MR. PRINCE: Or that she was ever friendly with this woman or associated with this woman. So I don't know what the basis of her fear is."

[2] "MR. PRINCE: Your Honor, it is your responsibility to determine how tainted the jury is because although the remarks made by this juror could remain with only one person we don't know that.

And before there is a mistrial declared, as of this moment the defendant Barton would oppose a mistrial."

[3] "MR. PRINCE: Your Honor, may I be heard. First of all, I am opposed to the declaration of a mistrial without the Court hearing me further and determining just how infected the jury panel is.

Secondly, I would oppose a declaration of mistrial because the defendant Barton would be content to go forward with this jury as presently constituted even with an alternate taking [the juror's] place.

Thirdly, I would oppose impaneling another jury because of the seriousness of double jeopardy and the seriousness of opening it up to appellate review because of double jeopardy prevents an individual from being put in jeopardy twice.

So I'd want to save his rights for various reasons. I would oppose any declaration of a mistrial and oppose impaneling a second jury."

man and "had to get off the case." Nothing was elicited to indicate that the second juror, or any other juror, knew the precise nature of the first juror's difficulty. The second juror was also excused from the panel.

The trial judge expressed his concerns that the remaining jurors might have become aware of what had transpired and that they might have been prejudiced. He was also concerned with the fact that both additional jurors had been excused. Counsel for Barton stated his belief that the evidence would be completed that afternoon and repeated his objection to a mistrial.[4] The trial judge reiterated his intention to declare a mistrial. Counsel for Barton moved for a severance.[5] The prosecutor objected to a severance because, in his view, the damage was "irremedial" and because "[t]he Commonwealth has the right to try the two cases together." After some additional colloquy, the trial judge declared a mistrial.

---

[4] "MR. PRINCE: There is a possibility this case could be concluded if we go a little bit longer this afternoon.

THE COURT: I'd like to do it, but I'm not going to.

MR. PRINCE: May I finish, for the record. As far as Mr. Barton is concerned, he is satisfied with this jury.

The inferences that have been drawn by the two jurors that have now been excused have only been drawn towards the co-defendant Mr. Nixon.

Mr. Barton is still content with this jury, and ready, and willing to continue with this case even with the remaining twelve jurors because this case as far as he is concerned could be concluded today.

I would certainly oppose any motion to declare a mistrial at this juncture. And if in fact you do decide to declare a mistrial that then we would use every opportunity for appellate review and, also, an opportunity to order a copy of the transcript so that we could be prepared for the next trial when it comes out."

[5] "MR. PRINCE: I can present to you . . . a Supreme Court case, which indicates if in fact a mistrial declared the defendant has the right to seek review —

Here a mistrial is being ordered over and above the defendant's objection. In fact, he is prepared to go forward and severance, over and above the fact he is prepared to go to trial with the remaining 12 jurors that are presently sitting. He is willing to take that chance.

It inures to the Commonwealth to go forward. I am willing to go forward. Mr. Barton is willing to go forward.

If you do not allow him to go forward, we are going to appeal for a decision. And we are entitled to do so."

Subsequently, the defendant moved before another judge of the Superior Court to dismiss the indictments. This judge made findings which in essence recast the events summarized above. He ruled, in denying the motion, that the objectivity of the jury had been tainted, that cautionary instructions and other alternatives to a mistrial had been considered and rejected as inadequate to cure the damage, and that a "manifest necessity" existed to support the declaration of a mistrial. The defendant filed a petition pursuant to the provisions of G. L. c. 211, § 3, in the Supreme Judicial Court, seeking relief from the motion's denial. Relief under c. 211, § 3, was denied by an order entered on January 26, 1981, which transferred the case to the single justice session of this court for evaluation and decision. See *Thames* v. *Commonwealth*, 365 Mass. 477, 479 (1974); *Costarelli* v. *Commonwealth*, 374 Mass. 677, 680 (1978); *Fadden* v. *Commonwealth*, 376 Mass. 604, 608 (1978), cert. denied, 440 U.S. 961 (1979); *Jones* v. *Commonwealth*, 379 Mass. 607, 615 (1980). Reservation and report of the constitutional question by the single justice to a panel followed.

We have before us the transcript of proceedings considered by the motion judge and we are in the same position as he was to decide the case. In these circumstances, our appellate function requires that we independently determine the correct application of constitutional principles to the events that occurred. See *Commonwealth* v. *Murphy*, 362 Mass. 542, 551 (1972) (Hennessey, J., concurring); *Commonwealth* v. *Haas*, 373 Mass. 545, 550 (1977); *Commonwealth* v. *Wilborne*, 382 Mass. 241, 251 (1981). The United States Supreme Court has consistently held that a mistrial can be ordered, over a defendant's objection, only upon a showing of "manifest necessity" or a "high degree" of necessity. *United States* v. *Perez*, 22 U.S. (9 Wheat.) 579, 580 (1824). *Downum* v. *United States*, 372 U.S. 734, 736 (1963). *United States* v. *Jorn*, 400 U.S. 470, 487 (1971). *Arizona* v. *Washington*, 434 U.S. 497, 506 (1978). There is no convenient test by which to determine the presence of

manifest necessity. "This is an area where every case must stand upon its own bottom." *United States* v. *Pierce*, 593 F.2d 415, 419 (1st Cir. 1979). See *Illinois* v. *Somerville*, 410 U.S. 458, 464 (1973); *Commonwealth* v. *Reinstein*, 381 Mass. 555, 561 (1980). In assessing the situation, a judge, considering the prosecution's motion for mistrial, must give considerable weight to the fact that the defendant possesses a "valued right to have his trial completed by a particular tribunal" (*United States* v. *Jorn*, 400 U.S. at 484, quoting from *Wade* v. *Hunter*, 336 U.S. 684, 689 [1949]), which is not to be foreclosed "until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." *United States* v. *Jorn, supra* at 485. The prosecutor as the moving party bears the burden of justifying a mistrial if he is to avoid the bar of double jeopardy, and the burden in this context has been stated to be a "heavy one." *Arizona* v. *Washington, supra* at 505. See *Commonwealth* v. *Donovan*, 8 Mass. App. Ct. 313, 314-315 (1979).

We think that the information before the trial judge was insufficient to support a conclusion that the jury's integrity had been damaged beyond repair. We also believe that the judge failed to give adequate consideration to the less drastic alternative of a severance which, if granted, would have permitted Barton's trial to continue to a verdict. There is no doubt that the first juror was properly excused. A sufficient basis existed, in the judge's discretion, to excuse the second juror, although it would have been preferable, before excusing her, to ascertain whether she could remain on the case with an open mind. No attempt was made to discover the reasons for the first juror's "problem." The information gathered from the second juror — in substance that the other members of the panel may have sensed some fear or nervousness on the first juror's part — would not have warranted a conclusion that the objectivity of the entire panel had been irreparably compromised. In view of defense counsel's strenuous and repeated objections, a reasoned decision on the motion for mistrial required that the judge

make at least a general inquiry of the remaining twelve jurors with respect to their knowledge of the incident and its effect on their ability to render an impartial verdict. The procedures set out in *Commonwealth* v. *Jackson*, 376 Mass. 790, 799-801 (1978), for dealing with the possible effect of prejudicial publicity on an empanelled jury, would have furnished a suitable guide for the conduct of this inquiry. There is no reason to believe, if this had been done, that the judge could not have obtained sufficient information upon which to base an exercise of informed discretion. If the jury had affirmed its impartiality, the motion for mistrial would have been denied and the trial permitted to continue to verdicts. On the other hand, if some difficulties were discovered, the judge could have decided whether the problems could be effectively dealt with short of aborting the trial.

Moreover, we think that the alternative remedy of a severance was inadequately explored. Barton's request for a severance took into account several considerations, including the fact that the incident with the juror involved only the defendant Nixon, the fact that the trial was likely to conclude that day or the next, and the fact that Barton was willing to take the chance that the remaining twelve jurors would be inclined to vote for an acquittal. The prosecutor's response, set forth below,[6] included renewal of his motion for a mistrial.

Recently, in *Jones* v. *Commonwealth*, 379 Mass. 607 (1980), the Supreme Judicial Court discussed the use of

---

[6] "Mr. O'Neill: Your Honor, I have no fear as to the issue of double jeopardy because it will not attach here.

The Commonwealth moved for trial on joint enterprise. Barton is accused of assault and battery with a dangerous weapon, to wit, a shotgun which the evidence clearly puts in the hands of Nixon, not Barton, and armed robbery, the armed weapon being the shotgun — clearly, a joint enterprise with Nixon.

The Commonwealth has the right to try the two cases together. To sever now and to go forward with one and not the other and dismiss the two jurors would not remedy the situation.

The situation is irremedial.

The Commonwealth moves again that the Court declare a mistrial."

severance as a means to protect a defendant's rights upon review of a claim of jeopardy after mistrial in the case of one of two men who were being jointly tried for murder, armed robbery, and armed assault and battery. The court indicated that a decision to deny a severance and to declare a mistrial was typically based "on the complexity of the case . . . and . . . on the proposition that in a complex, multidefendant case, fairness to all the defendants may preclude severance." *Id.* at 616. The court went on to state:

> "We think that the deep respect due a defendant's right to a single prosecution required serious consideration of severance as the appropriate remedy . . . . 'Rulings on motions for severance are governed by a wide discretion and have a strong basis in considerations of trial efficiency and convenience. But a much more restricted discretion controls where double jeopardy is concerned, since this is a fundamental constitutional right.' *Scott* v. *United States*, 202 F.2d 354, 356 (D. C. Cir.) (Bazelon, J., dissenting), cert. denied, 344 U.S. 879, and sub nom. *Bayne* v. *United States*, 344 U.S. 881 (1952). See Note, Jeopardy and Mistrials, 125 U.Pa.L.Rev. 449, 528 (1977). 'Many and unpredictable are the sources of conflicting rights among themselves in the trial of co-defendants, especially in conspiracy cases. We are reluctant to open the field to mistrial for the benefit of one defendant at the cost of the valued right of another defendant to go to the jury of his selection . . . .' *United States* v. *Glover*, 506 F.2d 291, 299 (2d Cir. 1974) (four defendants). Cf. *United States* v. *Alford*, 516 F.2d 941, 947 (5th Cir. 1975); *Thomas* v. *Beasley*, 491 F.2d 507, 509-510 (6th Cir.), cert. denied, 417 U.S. 955 (1974)."

*Id.* at 617. We believe that these principles apply here. As previously indicated, the prosecutor's notion that the damage was "irremedial" is not supported by facts established in

the record. The trial was near an end and the issues it presented were not complicated. The incident that occurred in this case was far less exacerbating than the several incidents which were discussed in the *Jones* decision, where severance was characterized as an appropriate remedy to avert a mistrial. The prosecutor's preference for a joint trial[7] must be subordinated — all other factors being equal — to the defendant's right "once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *United States* v. *Jorn*, 400 U.S. at 486. See also *United States* v. *Evers*, 569 F.2d 876, 878 (5th Cir. 1978). We appreciate, of course, that the trial judge was presented with a difficult situation which he attempted to deal with in a conscientious fashion. At the same time, we recognize the range of discretion a trial judge must have in determining whether a jury's integrity has been irreversibly damaged, "and we would not overturn a supported and reasoned exercise of discretion even if, on the basis of 20-20 hindsight, we might have reached the opposite conclusion." *United States* v. *Pierce*, 593 F.2d at 419. However, a trial judge has lesser leeway in allowing a mistrial over a defendant's objection than he does upon a defendant's motion. We feel that the trial judge's failure to explore severance fully before declaring the mistrial for Barton, together with the other deficiencies discussed earlier, "preclude[] us from upholding his decision as an exercise of sound discretion."[8] See *Jones*

---

[7] The prosecutor's concern that his case might suffer if the trial did not proceed with both defendants is difficult to appreciate. It appears that the Commonwealth's case was nearly completed and that the jury had received the full story on the incident including the respective role of each assailant. Appropriate instructions would have permitted the jury to apply joint enterprise principles to Barton's case alone, and we do not believe that an application of those principles would have been difficult in the circumstances.

[8] The Commonwealth's argument that "[n]either party has a right to have his case decided by a jury which may be tainted by bias" (*Arizona* v. *Washington*, 434 U.S. at 516) is, of course, a correct one, but it does not apply in this case, for the reasons already discussed herein and for those

v. *Commonwealth*, 379 Mass. at 618, and cases cited; *United States* v. *McKoy*, 591 F.2d 218 (3d Cir. 1979).

With respect to the question reported to us we respond that, based on our review of the record, there was no "manifest necessity" for the mistrial for this defendant, and that the Commonwealth is barred from prosecuting him further on the indictments in question. The case is remanded to the Superior Court, where the indictments against the defendant Barton are to be dismissed.

*So ordered.*

---

discussed in *Jones* v. *Commonwealth*, *supra* at 618-619. Nor do we think that the factual differences which have been pointed out by the Commonwealth between this case and *Jones* are significant enough to make the statement of principles in *Jones* with respect to severance inapplicable to the issues before us. We are also cognizant of the recent decision in *Commonwealth* v. *Reinstein*, 381 Mass. 555 (1980), where the grant of a mistrial in a situation of potential juror bias was upheld. Unlike this case, a wide range of alternatives was fully explored before the mistrial was declared. Moreover, the defendant in that case opposed the one remedy open to avoid a mistrial and made no proposal of any other alternative to the declaration of a mistrial. We conclude that the Commonwealth cannot rely on the *Reinstein* case as controlling the merits of the question before us.